ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
KEVIN A. SEELY (199982)
ASHLEY R. RIFKIN (246602)
STEVEN M. MCKANY (271405)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
         kseely@robbinsarroyo.com
         arifkin@robbinsarroyo.com
         smkany@robbinsarroyo.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Site 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
         rapeterson@locklaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VLADI ZAKINOV, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.  **'17 CV1301 AJB  WVG** |
| Plaintiff, | ) ) | CLASS ACTION COMPLAINT FOR: |
| v. | ) ) | (1) NEGLIGENT MISREPRESENTATION; |
| BLUE BUFFALO PET PRODUCTS, INC, a Delaware corporation, | ) ) ) | (2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT; |
| Defendant. | ) ) ) ) | (3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERITSING LAW; |
| | ) ) | (4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW; |
| | ) ) | (5) BREACH OF EXPRESS WARRANTY; |
| | ) ) | (6) BREACH OF IMPLIED WARRANTY; AND |
| | ) | (7) NEGLIGENCE PER SE |
| | ) ) | DEMAND FOR JURY TRIAL |

Plaintiff Vladi Zakinov ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, as and for his Class Action Complaint against defendant Blue Buffalo Pet Products, Inc. ("Blue Buffalo" or "Defendant"), alleges the following based upon personal knowledge as to himself and his own actions and investigation by his counsel, including independent testing of the products, and as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

1.     Plaintiff, individually and on behalf of all others similarly situated, by and through his undersigned attorneys, brings this class action against Defendant to cause Blue Buffalo to disclose the presence of dangerous substances in its pet food sold throughout the United States and to restore monies to the consumers who purchased the Contaminated Dog Foods (as defined herein) during the time that Defendant failed to make such disclosures.

2.     Defendant manufactures, markets, distributes, and sells Blue Wilderness Chicken Recipe for Small Breed Adult Dogs; Blue Freedom Grain-Free Chicken Recipe for Small Breed Adult Dogs; and Blue Basics Grain-Free Turkey & Potato Recipe for Adult Dogs (the "Contaminated Dog Foods").[1]

3.     The Contaminated Dog Foods contain material and significant levels of lead, which is a carcinogen and developmental toxin known to cause health problems to consumers.  Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[1] Discovery may reveal additional products that also contain unsafe levels of heavy metals and Plaintiff reserves his right to include any such products in this action.

4.     Defendant has advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain lead, or these toxins can over time accumulate in the dog's body to the point where lead poisoning, injury, and disease can occur.

5.     Defendant's omissions are false, misleading, and reasonably likely to deceive the public, especially in the light of Defendant's affirmative representations that imply that the Contaminated Dog Food is healthy and safe.  For instance, Defendant claims that the Contaminated Dog Foods contains "LifeSource Bits®," a claimed "precise blend of antioxidants, vitamins and minerals selected by holistic veterinarians and animal nutritionists that support: Immune system health; Life stage requirements; [and] Healthy oxidative balance."  Moreover, each bag of the Contaminated Dog Food declares the food is "Healthy" and "Holistic."

6.     Nothing could be further from the truth, as the Contaminated Dog Foods' inclusion of an unsafe amount of lead creates a health hazard for dogs. Notably, this is exactly what happened to Plaintiff's dog.  Plaintiff's beloved pet dog developed a kidney disease and eventual failure after ingesting the Contaminated Dog Foods.  This was a shocking occurrence since the dog was only approximately four years old.  Defendant's statements and omissions are false, misleading, and reasonably likely to deceive the public, especially in the light of Defendant's affirmative representations that imply that the Contaminated Dog Foods are healthy and safe.

7.     Moreover, a reasonable consumer, such as Plaintiff, would have no reason to not expect and anticipate that the Contaminated Dog Food is healthy, holistic, and safe as advertised and marketed by Defendant.  Non-disclosure and concealment of lead in Contaminated Dog Foods plus the claims of a "precise blend of antioxidants, vitamins, and minerals" to support healthy pets by Defendant is intended to and does in fact cause consumers to purchase a product Plaintiff and members of the Class (as defined herein) would not have bought had

disclosure been made.  As a result of Blue Buffalo's false statements, omissions, and concealment, Defendant has generated substantial sales of the Contaminated Dog Foods.

8.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers within the United States who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of material and significant levels of lead in the Contaminated Dog Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Contaminated Dog Foods are safe and healthy for themselves and their families, and to obtain redress for those who have purchased the Contaminated Dog Foods.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff resides and suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

11.     Plaintiff is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff purchased the Contaminated Dog Foods as the primary food source for his dog, a four-year-year old cocker spaniel-poodle mix named "Coco."  Coco experienced kidney failure.  Plaintiff spent a significant

amount of money on the Contaminated Dog Foods and treatments for Coco. Plaintiff suffered injury as a result of Defendant's actions.

12.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what it promised.  He paid the above sum on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was safe to feed his dog the food.  Plaintiff would not have paid this money had he known that the Contaminated Dog Foods contained an excessive degree of lead.  Defendant promised Plaintiff pet food that was safe for his dog to eat but delivered something else entirely, thereby depriving him of the benefit of his bargain.  Damages can be calculated through expert testimony at trial.  Further, should Plaintiff encounter the Contaminated Dog Foods in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

13.     Defendant is incorporated in Delaware with its headquarters located at 11 River Road, Wilton, Connecticut.   Through its wholly-owned operating subsidiary, Blue Buffalo Company, Ltd., Defendant operates as a pet food company in the United States, Canada, Japan, and Mexico.  Blue Buffalo develops, produces, markets, and sells dog and cat food under the BLUE Life Protection Formula, BLUE Wilderness, BLUE Basics, BLUE Freedom, and BLUE Natural Veterinary Diet lines.   It also produces and sells cat litter under the BLUE Naturally Fresh line.   Blue Buffalo sells its products to retail partners and distributors in specialty channels, including national pet superstore chains, regional pet store chains, neighborhood pet stores, farm and feed stores, eCommerce retailers, military outlets, hardware stores, and veterinary clinics and hospitals.

14.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Contaminated Dog Foods under the Blue Buffalo dog food products brand name throughout the United States.  The advertising for

the Contaminated Dog Foods, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising and labeling that contained the misrepresentations alleged herein.  The advertising and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e., Plaintiff and the Class, into purchasing the Contaminated Dog Foods.  Defendant owns, manufactures, and distributes the Contaminated Dog Foods, and created and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

15.    The Contaminated Dog Foods, at a minimum, include:

(a)    Blue Wilderness Chicken Recipe for Small Breed Adult Dogs:



(b)    Blue Freedom Grain-Free Chicken Recipe for Small Breed Adult Dogs:

1
2
3
4
5
6
7
8
9
10
11
12
13



14    (c)    Blue Basics Grain-Free Turkey & Potato Recipe for Adult

15  Dogs:

16
17
18
19
20
21
22
23
24
25
26
27
28



16.     Moreover, each of the Contaminated Dog Foods includes what Defendant describes as "LifeSource Bits."  Defendant claims on the Contaminated Dog Foods' packaging that these "LifeSource Bits" "are a precise blend of antioxidants, vitamins and minerals selected by holistic veterinarians and animal nutritionists that support: Immune system health; Life stage requirements; [and] Healthy oxidative balance."

17.     Defendant also claims on the Contaminated Dog Foods' packaging that it leads to a "Healthy Immune System Essential vitamins, chelated minerals and important antioxidants help support the immune system" and "Healthy Muscle Development."

## FACTUAL ALLEGATIONS

**Lead Is Exceptionally Dangerous When Ingested**

18.     Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States. Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

19.     The State of California has included lead as a known carcinogen and developmental toxin on the Proposition 65 list, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986.

20.     The FDA has set standards that regulate the maximum parts per billion ("ppb") of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead.  *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

**Blue Buffalo Falsely Advertises the Contaminated Dog Food as Healthy While Omitting Any Mention of Lead**

21.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells its extensive Blue Buffalo lines of dry and wet pet food products in California and across the United States.

22.     Based on Defendant's decision to advertise, label, and market its Contaminated Dog Foods as healthy and safe, it had a duty to ensure that the these statements were true.  As such, Defendant knew or should have known that the Contaminated Dog Food included higher levels of lead.

23.     The Contaminated Dog Foods are available at numerous retail and online outlets.

24.     The Contaminated Dog Foods are widely advertised.

25.     The official Blue Buffalo website displays the Contaminated Dog Foods' descriptions and full lists of ingredients for the Contaminated Dog Foods. The Defendant's webpages again and again repeat the misleading statements about the benefits of the Contaminated Dog Foods described above, without any mention of the lead they contain.

26.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of lead in the Contaminated Dog Foods without conducting his or her own scientific tests, or reviewing third party scientific testing of these products.

27.     That is exactly what Plaintiff did here.  Plaintiff's independent lab testing of the Contaminated Dog Foods found that Blue Wilderness Chicken Recipe for Small Breed Adult Dogs contains 200 ppb of lead; Blue Freedom Grain-Free Chicken Recipe for Small Breed Adult Dogs contains 140 ppb of lead; and Blue Basics Grain-Free Turkey & Potato Recipe for Adult Dogs contains a staggering 840 ppb of lead.

**DEFENDANT'S STATEMENTS AND OMISSIONS
VIOLATE CALIFORNIA LAWS**

28.     California law is designed to ensure that a company's claims about its products are truthful and accurate.   Defendant violated California law by incorrectly claiming that the Contaminated Dog Foods are healthy and safe for consumption and by not accurately detailing that the products contain lead.

29.     Defendant's marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

30.     Defendant has engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were healthy, safe for consumption, and did not contain harmful ingredients, such as lead.

**PLAINTIFF'S RELIANCE WAS REASONABLE
AND FORESEEN BY DEFENDANT**

31.     Plaintiff reasonably relied on Defendant's own statements, misrepresentations, and advertising concerning the particular qualities and benefits of the Contaminated Dog Foods.

32.     Plaintiff read and relied upon the labels of the Contaminated Dog Foods in making his purchasing decisions, along with viewing the statements, misrepresentations, and advertising on Defendant's website and elsewhere on the Internet.

33.     A reasonable consumer would consider the labeling of a product when deciding whether to purchase.  Here, Plaintiff relied on the specific statements and misrepresentations by Defendant that the Contaminated Dog Foods were healthy and the absence of any statement that the Contaminated Dog Foods contained lead.

## DEFENDANT'S KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES

34.    Defendant had sufficient notice of its breaches of its express and implied warranties.  Defendant had, and has, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods.

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

35.    Defendant knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of its advertising and statements.

36.    Defendant intended that its statements and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Class.

37.    Defendant directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising, and packaging.

38.    Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action individually and on behalf of the following class pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in the United States citizens who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household use, and not for resale (the "Class").

40.    In addition, Plaintiff brings this action individually and on behalf of the following subclass pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in California who, from July 1, 2013 to the present, purchased the Contaminated Dog Foods for household use, and not for resale (the "Subclass").

- 10 -

41. Excluded from the Class are the Defendant, any of its parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

42. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

43. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

44. Questions of law and fact common to Plaintiff and the Class and Subclass include, but are not limited to, the following:

(a) whether Defendant owed a duty of care to the Class;

(b) whether Defendant knew or should have known that the Contaminated Dog Foods contained higher levels of lead;

(c) whether Defendant represented and continues to represent that the Contaminated Dog Foods are healthy and safe for consumption;

(d) whether Defendant failed to state that the Contaminated Dog Foods contained lead;

(e) whether Defendant's representations in advertising and/or labeling are false, deceptive, and misleading;

(f) whether those representations are likely to deceive a reasonable consumer;

(g) whether Defendant had knowledge that those representations were false, deceptive, and misleading;

(h) whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(i) whether a representation that a product is healthy and safe for consumption and do not contain lead is material to a reasonable consumer;

(j) whether Defendant's representations and claims that the Contaminated Dog Foods are healthy and safe for consumption and do not contain lead are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(k) whether Defendant violated California Business & Professions Code sections 17200, *et seq.*;

(l) whether Defendant violated California Business & Professions Code sections 17500, *et seq.*;

(m) whether Defendant violated California Civil Code sections 1750, *et seq.*;

(n) whether Defendant was unjustly enriched;

(o) whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(p) whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

45. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

46. Plaintiff's claims are typical of Class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

47.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

48.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

49.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

50.     As a result of the foregoing, Class treatment is appropriate.

## COUNT I

**(Negligent Misrepresentation Against Defendant on Behalf of the Class)**

51.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52.     Plaintiff reasonably placed his trust and reliance in Defendant that the Contaminated Dog Foods marketed and advertised to him and the Class were healthy and safe for consumption and did not contain lead.

53.     Because of the relationship between the parties, the Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of lead in the Contaminated Dog Foods or, based upon its superior knowledge, having spoken, to say enough to not be misleading.

54.     Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Dog Foods.

55.     Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant.  As a result, Plaintiff and the Class purchased the Contaminated Dog Foods at a premium.

56.     Defendant failed to use reasonable care in its communications and representations to Plaintiff and Class.

57.     By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## COUNT II

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Subclass)**

58.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.     Plaintiff and each proposed Subclass member is a "consumer," as that term is defined in California Civil Code section 1761(d).

60.     The Contaminated Dog Foods are "goods," as that term is defined in California Civil Code section 1761(a).

61.     Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

62.     Plaintiff and each proposed Subclass member's purchase of Defendant's Products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

63.     Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)     California Civil Code section 1770(a)(5), by representing that the Contaminated Dog Foods are healthy and safe for consumption and by failing to make any mention of lead in the Contaminated Dog Foods;

(b)     California Civil Code section 1770(a)(7), by representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of another;

(c)     California Civil Code section 1770(a)(9), by advertising the Contaminated Dog Foods with intent not to sell them as advertised; and

(d)     California Civil Code section 1770(a)(16), by representing that the Contaminated Dog Foods have been supplied in accordance with previous representations when they have not.

64.     As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

65.     On June 23, 2017, counsel for Plaintiff and the proposed Class sent Defendant written notice (via U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA.

66.     Plaintiff seeks an award of attorney's fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT III

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Subclass)**

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

69.     As set forth herein, Defendant's claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public.

70.     Defendant's claims that the Contaminated Dog Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any mention of lead in the Contaminated Dog Foods.

71.     Defendant knew, or reasonably should have known, that the claims were untrue or misleading.

72.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if he can be assured that, so long as the Contaminated Dog Foods are, as advertised, healthy and safe for consumption and do not contain lead.

73.     Plaintiff and members of the Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Dog Foods.

## COUNT IV

### (Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Subclass)

74.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

75.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

76.     Defendant's statements that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public, as is Defendant's failing to make any mention of lead in the Contaminated Dog Foods.

**Unlawful**

77.     As alleged herein, Defendant has advertised the Contaminated Dog Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

• The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

• The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

78. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

79. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

80. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

81. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

82. On behalf of himself and the Subclass, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

# COUNT V

## (Breach of Express Warranty, California Commercial Code §2313, Against Defendant on Behalf of the Subclass)

83.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.   As set forth herein, Defendant made express representations to Plaintiff and the Subclass that the Contaminated Dog Foods were healthy and safe for consumption.

85.   These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

86.   There was a sale of goods from Defendant to Plaintiff and the Subclass members.

87.   On the basis of these express warranties, Defendant sold to Plaintiff and the Subclass the Contaminated Dog Foods.

88.   Defendant knowingly breached the express warranties by including lead in the Contaminated Dog Foods.

89.   Defendant was on notice of this breach as it was aware of the included lead in the Contaminated Dog Foods.

90.   Privity exists because Defendant expressly warranted to Plaintiff and the Subclass that the Contaminated Dog Foods was healthy and safe for consumption.

91.   Plaintiff and the Subclass reasonably relied on the express warranties by Defendant.

92.   As a result of Defendant's breaches of its express warranties, Plaintiff and the Subclass sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendant represented.

93.   Plaintiff, on behalf of himself and the Subclass, seeks actual damages for Defendant's breach of warranty.

## COUNT VI

### (Breach of Implied Warranty, California Commercial Code §2314, Against Defendant on Behalf of the Subclass)

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     As set forth herein, Defendant made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiff and the Subclass that the Contaminated Dog Foods were healthy and safe for consumption and did not contain lead.

96.     The Contaminated Dog Foods did not conform to these affirmations and promises as they contained lead at unsafe levels.

97.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

98.     Defendant is a merchant engaging in the sale of goods to Plaintiff and the Subclass.

99.     There was a sale of goods from Defendant to Plaintiff and the Subclass members.

100.    Defendant breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained lead.

101.    Defendant was on notice of this breach as it was aware of the lead included in the Contaminated Dog Foods.

102.    Privity exists because Defendant impliedly warranted to Plaintiff and the Subclass through the advertising, marketing, and labeling that the Contaminated Dog Foods were healthy and safe for consumption and by failing to make any mention of lead in the Contaminated Dog Foods that the no lead was contained in the products.

103.   As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Subclass sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendant represented.

104.   Plaintiff, on behalf of himself and the Subclass, seeks actual damages for Defendant's breach of warranty.

## COUNT VII

### (Negligence Per Se Against Defendant on Behalf of the Class)

105.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106.   Defendant has a statutory duty to not mislabel its products under California Health & Safety Code section 113095.  Under section 113095, a pet food is mislabeled:

   (a)   "If its labeling is false or misleading in any particular"; or

   (b)   "If its container is so made, formed or filled as to be misleading."

107.   This statute sets out the standard of care for Defendant that it failed to meet by failing to disclose that the Contaminated Dog Food contained unsafe levels of lead as a reasonable consumer would expect when the label states it is healthy and holistic.

108.   Defendant also had a statutory duty to not sell adulterated products under California Health & Safety Code section 113090.  Under California Health & Safety Code section 113090, a pet food is adulterated, including:

   (a)   "If any valuable constituent has been in whole or in part omitted or abstracted therefrom";

   (b)   "If any substance has been substituted wholly or in part therefor"; or

   (c)   "If damage or inferiority has been concealed in any manner."

109.   This statute sets out the standard of care for Defendant that it failed to meet by failing to disclose that the Contaminated Dog Foods were inferior based on the unsafe level of lead included.

110.   Defendant's violations of these statutes were a substantial factor in the harm suffered by Plaintiff and the Class, including paying a premium price for the Contaminated Dog Foods based on the misrepresentations.

111.   Plaintiff and the Class as consumers of dog food are within the class of persons the legislature intended to protect under these statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class and Subclass, and requiring Defendant to bear the costs of class notice;

B.   An order enjoining Defendant from selling the Contaminated Dog Foods until the unsafe levels of lead are removed;

C.   An order enjoining Defendant from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy and safe for consumption;

D.   An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.   An order requiring Defendant to pay restitution to restore all funds

1    acquired by means of any act or practice declared by this Court to be an unlawful,

2    unfair, or fraudulent business act or practice, untrue or misleading advertising, or a

3    violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus

4    pre- and post-judgment interest thereon;

5      G. An order requiring Defendant to disgorge or return all monies,

6    revenues, and profits obtained by means of any wrongful or unlawful act or

7    practice;

8      H. An order requiring Defendant to pay all actual and statutory damages

9    permitted under the counts alleged herein;

10     I. An order requiring Defendant to pay punitive damages on any count

11   so allowable;

12     J. An order awarding attorneys' fees and costs to Plaintiff, the Class and

13   the Subclass; and

14     K. An order providing for all other such equitable relief as may be just

15   and proper.

16   **JURY DEMAND**

17     Plaintiff hereby demands a trial by jury on all issues so triable.

18   Dated: June 26, 2017     ROBBINS ARROYO LLP

19                   BRIAN J. ROBBINS
                KEVIN A. SEELY

20                   ASHLEY R. RIFKIN
                STEVEN M. MCKANY

21

22                   */s/Brian J. Robbins*

23                   BRIAN J. ROBBINS

24                   600 B Street, Suite 1900
                San Diego, CA 92101

25                   Telephone: (619) 525-3990

26                   Facsimile: (619) 525-3991
                E-mail: brobbins@robbinsarroyo.com

27                      kseely@robbinsarroyo.com
                   arifkin@robbinsarroyo.com

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
          rapeterson@locklaw.com

Attorneys for Plaintiff

1186374