# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADI ZAKINOV, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE BUFFALO PET PRODUCTS, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 17-cv-01301-AJB-WVG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Presently before the Court is Defendant Blue Buffalo Pet Products, Inc.'s ("Defendant") motion to dismiss Plaintiff Vladi Zakinov's ("Plaintiff") first amended complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 19.) Also pending before the Court is Defendant's request for judicial notice. (Doc. No. 19-2.) On December 5, 2017, Plaintiff filed an opposition to Defendant's motion, (Doc. No. 22), and to Defendant's request for judicial notice, (Doc. No. 21). Having reviewed the parties' arguments, controlling legal authority, and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS** both Defendant's request

for judicial notice and its motion to dismiss.

## BACKGROUND

### A. Factual Background

The following facts are taken from the FAC and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Defendant manufactures, markets, distributes, labels, and sells Blue Wilderness Chicken Recipe for Small Breed Adult Dogs, Blue Freedom Grain-Free Chicken Recipe for Small Breed Adult Dogs, and Blue Basics Grain-Free Turkey & Potato Recipe for Adult Dogs (the "Contaminated Dog Foods"). (Doc. No. 15 ¶ 1.) Defendant advertises its Contaminated Dog Foods as healthy and safe. (*Id.* ¶ 4.) Explicitly, Defendant claims that the foods contain "LifeSource Bits," which is marketed as a "precise blend of antioxidants, vitamins and minerals selected by holistic veterinarians and animal nutritionists that support: Immune system health; Life stage requirements; [and] Healthy oxidative balance." (*Id.*) Additionally, each bag of Contaminated Dog Foods contains a signature Blue Buffalo stamp that claims and warranties that it is made with "Superior Nutrition" and "Ultimate Protection." (*Id.*)

Unfortunately, according to Plaintiff, who purchased the Contaminated Dog Foods as the primary source of food for his dog from October 2015 through May 2016, the products at issue include an unsafe amount of lead that creates a health hazard for dogs. (*Id.* ¶¶ 5, 10.) Specifically, Plaintiff contends that the lead can accumulate in a dog's body and overtime it results in lead poisoning, injury, and disease. (*Id.* ¶ 3.) In fact, Plaintiff states that his four-year-old dog developed kidney disease as a result of ingesting the Contaminated Dog Foods. (*Id.* ¶ 5.) Plaintiff thus argues that had he known about the amount of lead in Defendant's dog food products or had Defendant fully disclosed this fact, he would have stopped purchasing the Contaminated Products. (*Id.* ¶ 10.)

In sum, Plaintiff alleges that through Defendant's negligent and deceptive conduct, it did not deliver or conform to what it advertised—that its dog food is of premium quality

and provides healthy nutrients that is safe to feed to dogs. (*Id.* ¶ 11.) Moreover, Plaintiff asserts that Defendant intentionally misrepresented and omitted any mention of lead in its packaging and labels, that Defendant knew or should have reasonably expected that the presence of lead in its dog foods was something an average consumer would consider when picking out food for their dogs, and that a reasonable consumer would be misled by the advertisements. (*Id.* ¶¶ 1, 3, 13, 20.) Thus, Plaintiff argues that while he bought the Contaminated Dog Foods believing that it contained healthy immune system essential vitamins and antioxidants, it in fact contained high levels of lead, which is a known carcinogen and developmental toxin. (*Id.* ¶¶ 13, 17, 19.)

Plaintiff filed his complaint on June 26, 2017. (Doc. No. 1.) Thereafter, on August 30, 2017, Defendant filed a motion to dismiss. (Doc. No. 11.) In response, Plaintiff filed his first amended complaint. (Doc. No. 15.) Plaintiff's FAC alleges causes of action for: (1) Negligent Misrepresentation; (2) Violations of the California Consumer Legal Remedies Act; (3) Violations of the California False Advertising Law; (4) Violations of the California Unfair Competition Law; (5) Breach of Express Warranty; and (6) Breach of Implied Warranty. (*Id.*) On November 7, 2017, Defendant filed the instant action, its motion to dismiss based largely on res judicata grounds. (Doc. No. 19.)

### B. The *In re Blue Buffalo* Settlement

On June 16, 2016, Defendant received judicial approval of a nationwide class action settlement, *In re Blue Buffalo*, resolving false advertising claims brought against it. (Doc. No. 19-1 at 11.) The plaintiffs brought this case alleging that Defendant had breached its "True Blue Promise" by advertising that its animal food products did not contain any chicken or poultry by-product, corn, wheat, or soy. (Doc. No. 19-2 at 21, 126, 129.) However, contrary to their ads, the plaintiffs tested the products and asserted that they actually contained significant amounts of the aforementioned ingredients. (*Id.* at 129.)

In connection with the settlement, it covered any person who purchased any Blue Buffalo products from May 7, 2008, through the Preliminary Approval Date—December 18, 2015 ("Settlement Class Members"). (*Id.* at 27; Doc. No. 19-1 at 11.) The nationwide

class settlement also contained very broad release language, covering any and all claims that were asserted or could have been asserted "relating in any way to the marketing, advertising, or labeling of any of the Blue Buffalo Products . . . ." (Doc. No. 19-2 at 43.) Additionally, the agreement noted that the final order and judgment were binding on and had res judicata and preclusive effect in all future lawsuits maintained by or on behalf of all the plaintiffs and all other Settlement Class Members. (*Id*. at 16.)

Further, the settlement included a broad release that expressly enjoined the plaintiffs from filing a lawsuit "relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action[.]" (*Id*. at 17.) The settlement also held that all class members who did not opt out were "bound by all proceedings, orders and judgments in the Action, even if such Settlement Class Member had previously initiated ***or subsequently initiates*** individual litigation or other proceedings encompassed by the Settlement Agreement release." (*Id*. at 17–18 (emphasis added).)

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ."

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### A. Defendant's Request for Judicial Notice

Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant asks the Court to take judicial notice of six exhibits: (1) the Final Order and Judgment entered in *In re Blue Buffalo*[1]; (2) the Stipulation of Settlement filed in *In re Blue Buffalo*; (3) the Consolidated Class Action Complaint in *In re Blue Buffalo*; (4) the Conditional Class Certification and Preliminary Approval Order entered in *In re Blue Buffalo*; (5) the Federal Food and Drug Administration's Questions and Answers on Lead in Foods; and (6) the Federal Food and Drug Administration's Target Animal Safety Review Memorandum. (Doc. No. 19-2 at 2–3.)

Plaintiff opposes judicial notice of the four items related to *In re Blue Buffalo* arguing that they do not fall within the eight categories of court records that are proper subjects of judicial notice. (Doc. No. 21 at 6–9.) Moreover, even if the proffered documents were judicially noticed, Plaintiff asserts that the Court must refrain from taking notice of the truth of the contents of the documents. (*Id.* at 7.)

The four *In re Blue Buffalo* exhibits are public court records filed on the Missouri court's docket. Accordingly, it is undeniable that this Court "may take judicial notice of its

---

[1] The case referenced is *In re Blue Buffalo Company, Ltd. Marketing and Sales Practices Litigation*, Case No. 4:14-md-02562-RWS (E.D. Mo.) ("*In re Blue Buffalo*"). (Doc. No. 19-2 at 2.)

own records in other cases . . . ." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also Rowland v. Paris L.V.*, No. 3:13-cv-02630-GPC-DHB, 2014 WL 769393, at *3 (S.D. Cal. Feb. 25, 2014) (stating that judicial notice of court records is routinely taken). The Court notes however, that Plaintiff is correct that though the Court "may take judicial notice of the existence of unrelated court documents [] it will not take judicial notice of such documents for the truth of the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010). Accordingly, the Court takes judicial notice of the first four documents for the above-mentioned limited purpose. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (establishing that the court could take judicial notice of the waiver of extradition form, which included judicially noticing the fact of the extradition hearing, the fact the waiver was signed, and the fact that the party waived his right to challenge his extradition).

As to the last two exhibits, both found on the FDA's website, the Court finds judicial notice also warranted. Plaintiff argues that the last two exhibits are not beyond dispute and thus not subject to judicial notice. (Doc. No. 21 at 9–12.) However, citing to a case that Plaintiff himself employs in his opposition brief, a court can take judicial notice of FDA documents published on a government website. (Doc. No. 21 at 9 (*see Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017); *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (finding judicial notice of FDA documents located on the FDA website justified as they were materials available on government agency websites); *Paralyzed Veterans of Am. v. McPherson,* No. C 06–4670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (holding that information on government agency websites has often been treated as proper subjects for judicial notice)).) However, to the extent that Plaintiff reasonably disputes the facts within the FDA documents, the Court refrains from taking judicial notice of them.

Thus, with the previous limitations in mind, the Court **GRANTS** Defendant's request for judicial notice.

///

**B. Dismissal on the Basis of Res Judicata**

Defendant argues that Plaintiff's FAC is barred because (1) all of the Ninth Circuit's requirements for res judicata are met; and (2) the terms of the Blue Buffalo MDL Settlement specifically releases any such claims. (Doc. No. 19-1 at 13–16.) Plaintiff mounts in opposition that the law of res judicata does not support Defendant's arguments because he has brought a new lawsuit that turns on different allegations than those in *In re Blue Buffalo*. (Doc. No. 22 at 9–17.)

Res judicata, or claim preclusion, prevents relitigation of the same causes of action between the same parties, or parties who are in privity. *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051–52 (9th Cir. 2005). The purpose behind the doctrine is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on prior adjudication. *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

A defendant prevails on a res judicata defense where: (1) the same parties, or their privies, were involved in the prior litigation; (2) the prior litigation involved the same claim or cause of action as the second suit; and (3) the prior litigation was terminated by a final judgment on the merits. *See Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971).

Both parties do not dispute that the first and third factors have been met. (Doc. No. 19-1 at 15–16; Doc. No. 22 at 10.) The Court notes that a settlement agreement constitutes a final judgment on the merits for purposes of res judicata. *See e.g.*, *Consumer Advocacy Grp., Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 694 (2008) ("A court-approved settlement acts as a final judgment on the merits for the purposes of res judicata."); *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013). Additionally, as Plaintiff alleges that he purchased the Contaminated Dog Foods beginning in October of 2015, (Doc. No. 15 ¶ 10), he is a member of the Settlement Class—the Settlement Class included all United States citizens who purchased Defendant's products from May 7, 2008 through December

18, 2015, (Doc. No. 19-1 at 16; Doc. No. 19-2 at 9).[2] Consequently, both Defendant and Plaintiff were parties to the *In re Blue Buffalo* action. Based on the foregoing, the Court focuses its analysis on the second of the three factors—whether the prior litigation involved the "same claim or cause of action" as the instant matter.

Plaintiff claims that the present lawsuit is not barred by res judicata as it focuses on the allegations that Defendant's Contaminated Dog Foods contain high levels of lead and heavy metals—a topic not touched upon in the prior action. (Doc. No. 22 at 7.) The Court disagrees with Plaintiff's restricted understanding of the law.

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992). The Ninth Circuit, in *In re, Int'l Nutronics, Inc.*, set forth factors for considering whether a prior action involved the same "claim or cause of action," including:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

28 F.3d 965, 970 (9th Cir. 1994) (citing to *Clark v. Bear, Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). Although no one single factor is determinative of whether a successive suit would be barred under res judicata principles, whether the "same

---

[2] Even if the foregoing was in dispute, the Court notes that Plaintiff is in privity with the plaintiffs in *In re Blue Buffalo*. *See Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action). Here, both cases stem from the desire to bring a proposed class action against Defendant for false advertising in relation to its animal food products. (*See generally* Doc. No. 15; Doc. No. 19-1 at 11.)

transactional nucleus of facts" exists is the most important factor in the analysis. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

At the outset, the Court finds it vital to first correct Plaintiff on his erroneous use of the law. Plaintiff asserts that *Sandoval v. Ali*, No. C-13-03230 (EDL), 2014 WL 12644025, at *6 (N.D. Cal. July 10, 2014), holds that for res judicata purposes the prior and current action must be <u>identical</u> in order to be characterized as the "same transactional nucleus of facts." (Doc. No. 22 at 11.) However, a cursory glance at *Sandoval* makes it clear that Plaintiff has mixed up the law. In *Sandoval*, the court held that <u>issue preclusion</u> not res judicata requires that "the issue at stake be identical to the one alleged in the prior litigation." 2014 WL 12644025, at *5. Whereas res judicata must have "an identity of claims in the two actions." *Id.* (citation omitted).

Curiously enough, Plaintiff cites to this exact quote in his opposition brief. (Doc. No. 22 at 11.) Thus, the Court is unsure if Plaintiff simply misread the case or wishes to muddle the law. Nevertheless, as Plaintiff employed the wrong standard, his arguments under this element are rendered meritless as well as legally feckless.

Next, turning to the factors, the Court notes that the rights and interests of the *Blue Buffalo* settlement would be destroyed if this action were allowed to proceed. The settlement agreement resolved the plaintiffs' common legal claims, provided the plaintiffs redress, as well as released Defendant from any and all claims. (Doc. No. 19-2 at 9–48.) Thus, if the Court were to allow Plaintiff, a member of the Settlement Class, to now sue Defendant, despite the settlement's broad release language, the Court would be unraveling the settlement and in essence rendering all of its stipulations moot.

Plaintiff argues that since *In re Blue Buffalo* and his case are not identical, the prior judgment would not be impaired by prosecution of this action. (Doc. No. 22 at 15.) However, as already discussed, Plaintiff employs a faulty understanding of the law—res judicata does not demand identical claims. Moreover, any further lawsuits arising from the same nucleus of facts would "lessen a defendant's incentive to settle," which according to the Ninth Circuit would be unfortunate as there is "an overriding public interest in settling

9

and quieting litigation." *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 649 (N.D. Cal. Apr. 6, 1978) (citation omitted). "This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Id*.

As to the second factor, the Court agrees with Plaintiff that the evidence in this case would differ from *In re Blue Buffalo*. In this matter, Plaintiff alleges that the Contaminated Dog Foods contain a high amount of toxins, heavy metals, and lead. (Doc. No. 15 ¶¶ 5, 11, 18–20.) In the prior matter, the plaintiffs asserted that Defendant's dog food products contained artificial ingredients and animal by-product when their advertising stated the opposite. (Doc. No. 19-2 at 21, 126, 137.) Thus, this factor weighs in favor of Plaintiff.

The third factor—infringement of the same primary right—weighs in favor of Defendant. Under this theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003) (citation omitted). Here, both matters involve parties who purchased Defendant's animal food products believing in Defendant's advertised promise that its food was healthy, nutritious, and good for dogs. (Doc. No. 15; Doc. No. 19-2 at 21–22, 126–129.) Thus, both actions are grounded upon the same claim—false advertising. (*Id*.)

Moreover, the two harms alleged—damages to the plaintiffs resulting from the purchase of Defendant's premium priced animal food products, damages incurred from being misled by Defendant's deceptive advertising, and punitive, compensatory, and statutory damages—are the same. (Doc. No. 15; Doc. No. 19-2 at 173–74.) The fact that Plaintiff brings his case alleging false advertising based upon a different subject does not change this conclusion. *See Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) ("The critical focus of primary rights analysis 'is the harm suffered.'") (citation omitted). Thus, the prior action and this lawsuit involve the same primary right. *See Moreno v. Lane Bryant, Inc.*, No. CV 10-09329 GAF (FMOx), 2011 WL 13217973, at *4 (C.D. Cal. Jan. 25, 2011)

(explaining that "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.") (citation omitted).

As to the final and most important factor, the Court concludes that the allegations in both complaints clearly arise from the same transactional nucleus of facts. Here, both lawsuits are predicated on the allegedly false, deceptive, and misleading marketing of Defendant's animal food products, and their content. (Doc. No. 15; Doc. No. 19-2 at 126, 133–34.) Although, the current matter makes these claims based on a different theory—that Defendant's products contain a high level of lead, this is still a "ground[] for recovery which could have been asserted . . . in [the] prior suit between the same parties . . . on the same cause of action." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). Thus, as Plaintiff could have conveniently brought his claims for false advertising, breach of express warranty, breach of implied warranty, and violations of the unfair competition law in the *In re Blue Buffalo* action, both matters arise from the same transactional nucleus of facts. *See United States v. Liquidators of European Fed. Credit Bk.*, 630 F.3d 1139, 1151 (9th Cir. 2011) (holding that in most cases "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action.") (internal quotation marks omitted).

In sum, though the evidence in the two actions may not be identical, the rest of the essential factors weigh in favor of finding that *In re Blue Buffalo* and the present matter both involve the same claim and/or cause of action.

Thus, despite Plaintiff's best efforts, he and his "imaginative attorney may [not] avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated" in the prior action. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003). Accordingly, as all of Plaintiff's causes of action are barred by res judicata, Defendant's motion to dismiss is **GRANTED**.

///

C.     **Dismissal Without Leave To Amend**

Defendant seeks dismissal of Plaintiff's FAC with prejudice. (Doc. No. 19-1 at 26–27.) Generally, under Federal Rule of Civil Procedure 15, the Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation omitted). A complaint may be dismissed without leave to amend only "when it is clear that the complaint cannot be saved by further amendment." *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

Presently, the Court finds dismissal of Plaintiff's FAC without leave to amend reasonable based on futility of amendment. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). In the Court's view there are no new allegations, claims, or causes of action that could alter the foundation of Plaintiff's complaint so much that it would not be the same nucleus as *In re Blue Buffalo*. Notably, the parties would remain the same, the vital primary right would still relate to false advertising, and the settlement is still a judgment on the merits. Accordingly, the Court **DENIES** Plaintiff leave to amend. *See Conway v. Geithner*, No. C 12-0264 CW, 2012 WL 1657156, at *3 (N.D. Cal. May 10, 2012) (dismissing the plaintiff's complaint without leave to amend as there was nothing that the plaintiff could change that would allow for the amended complaint to not be barred by res judicata).

## CONCLUSION

Due to Plaintiff's mischaracterization of the law, his arguments challenging the application of res judicata fall very short. Here, the Court concludes that all three factors for res judicata have been satisfied—the *In re Blue Buffalo* settlement was a final judgment on the merits, both actions involve the same parties, and both actions involve the same claim. The Court reiterates that "res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action." *Int'l Union of Operating Eng'r-Emp'r Const. Industry Pension, Welfare and Training Trust Funds*, 994 F.2d 1426, 1430 (9th Cir. 1993); *see also Conway*, 2012 WL 1657156, at *3 ("It is

immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment, rather, the relevant inquiry is whether they could have been brought.").

Accordingly, desiring to avoid piecemeal litigation, Plaintiff's FAC is **DISMISSED** on res judicata grounds **WITHOUT LEAVE TO AMEND**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED**.

Dated: March 22, 2018

Hon. Anthony J. Battaglia
United States District Judge